UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DONALD R. COONCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-cv-1222-DFH-DML |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Donald R. Coonce seeks judicial review of the Commissioner of
Social Security's decision denying his application for disability insurance benefits
under Title II of the Social Security Act.  Substantial evidence supported the ALJ's
decision that Mr. Coonce's schizophrenia and other mental impairments were not
severe, and certainly were not so severe as to be disabling while Mr. Coonce was
still insured.  Substantial evidence supported the Commissioner's decision that
Mr. Coonce was not disabled within the meaning of the Social Security Act.  The
court affirms the Commissioner's decision to deny benefits.

*Factual Background*

Mr. Coonce was born in 1951 and was 47 years old on his alleged disability
onset date, January 1, 1999.  He has twelve years of education and the following
work history:  working for thirteen years as a Goodyear automobile mechanic;

serving for one year as a fleet supervisor for the city of Carrolton, Texas; and running his own business of restoring old cars.  Mr. Coonce alleges that he became disabled on January 1, 1999.  In April 2004, Mr. Coonce filed an application for disability insurance benefits.  The Social Security Administration denied Mr. Coonce's claim and on reconsideration.  In October 2007, the Administrative Law Judge (ALJ) Peter C. Americanos held a hearing on Mr. Coonce's appeal.  The ALJ determined that Mr. Coonce had acquired enough quarters of coverage to remain insured through December 31, 2003.  To receive disability insurance benefits, Mr. Coonce was required to establish disability on or before that date.  R. 12.  In February 2008, the ALJ determined that Mr. Coonce was not disabled.  In August 2008, the Appeals Council denied Mr. Coonce's request for review of the ALJ's decision.

I.    *Medical Evaluations*

    A.    *1990-2003:  Mr. Coonce's Mental Health*

Mr. Coonce saw Dr. Harper, M.D., in Carrollton, Texas, between 1990 and 2002.  R. 139-57, 356-447.  During this twelve year time period, Mr. Coonce was not diagnosed with schizophrenia.  R. 356-447.   Mr. Coonce visited Dr. Harper frequently for a multitude of reasons, including tiredness, dizziness, nausea, and sleeplessness.  Mr. Coonce complained of the following mental health issues: situational stress anxiety, panic attacks, severe headaches, and depression.  In August 1999, Dr. Harper recommended that Mr. Coonce take a two week leave of

absence from work because of mental and physical illness.  Dr. Harper thought that Mr. Coonce would be cleared to work at the end of the two weeks.  R. 387.

In November 2003, Mr. Coonce arrived at the Hendricks Regional Health emergency room complaining of abdominal pain and fever.  R. 216.  Bruce Inman, M.D., was his treating physician.  At the time, Mr. Coonce was a car salesman who bought cars in Texas and brought them to Indiana to be fixed and sold. While on a trip to Texas, Mr. Coonce began to sweat profusely and felt that he had a fever.  R. 213.  One week later, while back in Indiana, his symptoms had not improved and he came to the emergency room.  Dr. Inman felt that Mr. Coonce's sickness had been caused by a virus.  R. 210.  Dr. Inman did not note that Mr. Coonce had any signs of schizophrenia.

B.      *2004*: *Mr. Coonce's Mental Health*

After his insured status had expired, Mr. Coonce saw Dr. Miller, a treating psychiatrist, between February 2004 and November 2006.  R. 196.  In February 2004, Dr. Miller found that Mr. Coonce was suffering from depression and sleeplessness.  R. 204.  Later in February 2004, Mr. Coonce drove to Texas to visit his sons.  Mr. Coonce reported memory gaps – not remembering driving to the west side of Indianapolis.  In March 2004, Mr. Coonce reported that he stopped hearing voices as a result of taking Seroquel.  R. 206.

Mr. Coonce visited Dr. Sanders, a neurologist and neuro-ophthalmologist, on April 12, 2004.  R. 163.  Mr. Coonce reported large gaps in his memory, black-out spells, and instances of not knowing where he was.  Mr. Coonce had horrible headaches that he described as feeling like someone trying to get out of his head from the inside using a "pick hammer."  Mr. Coonce reported four black-out spells, with one resulting in an auto accident.  R. 165.  Dr. Sanders found that Mr. Coonce's recent and remote memory was intact, his attention span and concentration were normal, his language was fluent, and his fund of knowledge was appropriate.  R. 164.  Without noting any source, Dr. Sanders reported that two months earlier, Mr. Coonce had been diagnosed with schizophrenia.  R. 166. Dr. Sanders also noted that Mr. Coonce had depression for 10 years.  *Id.*

At the request of Dr. Sanders, Christopher Sullivan, Ph. D., met with Mr. Coonce on May 17, 2004.  R. 287.  Dr. Sanders referred Mr. Coonce to Dr. Sullivan, a clinical neuropsychologist, to obtain an objective measure of his cognitive status.  Dr. Sullivan reported that Dr. Miller, Mr. Coonce's psychiatrist, had diagnosed him with schizophrenia in February 2004, R. 288, though Dr. Miller's records do not indicate that diagnosis.

Mr. Coonce complained to Dr. Sullivan of persistent cognitive problems that began after the November 2003 viral infection.  R. 287.  Mr. Coonce reported eight to ten black-out spells, one of which had resulted in an auto crash.  For one to two years before the appointment, Mr. Coonce had hallucinated; he had seen

Native Americans in his house and talked with his deceased father.  R. 288.  His hallucinations stopped after he began taking Seroquel.  R. 288.

During the evaluation, Dr. Sullivan administered a battery of tests, including: the Minnesota Multiphasic Personality Inventory-2, the Wechsler Adult Intelligence Scale-III, the Trail-Making test, and the Rey-Osterrith Complex Figure test.  During the testing, Dr. Sullivan found Mr. Coonce's mood to be more elevated than was appropriate for the situation.  R. 288.  Dr. Sullivan found that Mr. Coonce had a verbal intellectual ability of 101, which placed him in the 53rd percentile with a solidly average intellectual ability.  R. 289.  Mr. Coonce's non-verbal intellectual processing, however, was notably weak, with a score of 73, placing him in the 4th percentile.  Dr. Sullivan found that Mr. Coonce had "mild deficits in executive functioning . . . with regard to mental flexibility, concept formation and attention to detail."  Mr. Coonce scored below the 10th percentile on mental flexibility under time pressure.  *Id.*  Dr. Sullivan found that Mr. Coonce's executive dysfunction improved with appropriate support.  *Id.*

Dr. Sullivan administered the Minnesota Multiphasic Personality Inventory-2 to understand better Mr. Coonce's thinking, feeling, and behavior.  R. 290.  Mr. Coonce showed significant elevations on most clinical scales.  His results suggested to Dr. Sullivan that he "may have approached test-taking in an attempt to appear more impaired than he is in fact."  Even taking this into account, Dr. Sullivan thought there was evidence of psychopathology that was long-standing

in nature.   Mr. Coonce presented "at a clinically significant level symptoms associated with Schizophrenia." *Id.*

In his recommendations, Dr. Sullivan thought Mr. Coonce's "day-to-day difficulties were manageable." Through the administration of a 24-hour EEG, Dr. Sullivan ruled out viral infection as the cause of Mr. Coonce's cognitive difficulties. Dr. Sullivan recommended that Mr. Coonce seek the help of a psychologist who specialized in schizophrenia.

In June 2004, Dr. Miller filled out a report of psychiatric status for the Social Security Administration.   R. 196.   Dr. Miller diagnosed Mr. Coonce as having recurrent major depressive episodes of moderate severity for ten years.  R. 196; Diagnostic and Statistical Manual of Mental Disorders 376, 411-12 (4th Ed. 2000) (DSM-IV).   Dr. Miller noted that Mr. Coonce had driven himself to the meeting, his depression was largely resolved, and he could function in a job.  R. 197, 200.

Also in June 2004, R. Klion, Ph. D., a non-examining state reviewing psychologist, filled out a disability determination form.   Dr. Klion found that Mr. Coonce's mental impairments were not severe. R. 177.   Dr. Klion evaluated Mr. Coonce against Listing 12.04, affective disorders, but not against Listing 12.03, schizophrenic, paranoid, and other psychotic disorders.   Dr. Klion evaluated depression, an affective disorder.   R. 180.   For section III, rating functional

limitations, Dr. Klion found that Mr. Coonce had mild restrictions of activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended length.  R. 187.  In December 2004, F. Kladder, Ph. D., reviewed Dr. Klion's conclusions and concurred.  R. 177.

C.      *2005-2007:  Mr. Coonce's Mental Health*

In August 2005, according to Dr. Miller, Mr. Coonce was driving when he saw his deceased father standing next to the road.  R. 472.  Mr. Coonce was startled but was able to work through the issue.  By October 2005, Mr. Coonce's condition had improved notably, and he held two part time jobs that totaled thirty hours of work per week.  R. 471.  Two panic attacks in March 2006 sent Mr. Coonce to the emergency room.  R. 470.  In November 2006, Mr. Coonce got a job as a mechanic.  R. 461.  By December 2006, however,  Mr. Coonce was fired because he lacked transportation and his boss feared that he might faint on the job.  R. 460.

On November 6, 2007, about two weeks after the hearing in this case, Dr. Sullivan wrote a letter to the ALJ describing his 2004 evaluation of Mr. Coonce. Dr. Sullivan reiterated that the reason Dr. Miller referred Mr. Coonce to him in 2004 was because Dr. Miller wanted to know "whether his diagnosis of schizophrenia was accurate." R. 284.  Dr. Sullivan wrote that Dr. Miller diagnosed

Mr. Coonce with schizophrenia in February 2004.  R. 285.  In 2004, Dr. Sullivan noted that mild deficits in executive cognitive functioning were evident in Mr. Coonce.  R. 290.  In 2007, Dr. Sullivan said:  "Executive cognitive dysfunction, even when it is mild, represents a significant impediment to gainful employment." *Id.*  Dr. Sullivan thought the onset of Mr. Coonce's schizophrenia was likely sometime between February 2002 and February 2003.  R. 286.

II.    *Testimony*

    A.    *Mr. Coonce*

On October 24, 2007, Mr. Coonce testified before the ALJ.  R. 562.  Mr. Coonce testified that he first became disabled in 1999.  R. 564.  The ALJ asked Mr. Coonce to identify his most serious problem:   Mr. Coonce answered hallucinations. R. 564, 574. According to Mr. Coonce, Dr. Miller and Dr. Sullivan had both diagnosed him with schizophrenia.  R. 574.  On one occasion, Mr. Coonce was about to polish his shoes.  As he opened the can of polish, "the most hideous monster you ever seen in your life came out." *Id.*  At the time of his testimony, Mr. Coonce said, he was still seeing Native Americans in his house.  R. 568.   These hallucinations came out of nowhere and scared him.   R. 569. Medication had never stopped the hallucinations, he said, but they were less frequent than earlier.  R. 570.

Mr. Coonce has also had back problems.  These problems did not allow him to lift any items that weigh more than ten pounds.  *Id.*  Mr. Coonce's legs also hurt him, and he rated the back and leg pain as an eight on a scale of ten.  R. 576.  Mr. Coonce could sit for only thirty minutes at a time without having to get up.  R. 577.

Mr. Coonce still had a driver's license and drove, though he did not have a car.  R. 565.  Mr. Coonce thought that the last time he had driven to Texas for his car business was 2000 or 2001.  He was able to walk up to three or four city blocks at a time.  R. 578.  Mr. Coonce spent his time watching television and reading car magazines.  R. 579.

B.    *Dr. Loyd Stump*

Dr. Loyd Stump testified as a medical expert witness at the hearing.  Dr. Stump was "impressed" with Mr. Coonce's back complaint.  R. 581. After Mr. Coonce's viral infection in 2003, there was no follow-up treatment prescribed, and Dr. Stump felt that Mr. Coonce should be back to normal.  R. 582.  Dr. Stump came to the conclusion – though he did not take Mr. Coonce's mental problems into account because he is an internist – that Mr. Coonce could do medium level work.  *Id.*  Dr. Stump concluded that Mr. Coonce did not meet or medically equal any of the listings.  *Id.*

C.    *Ray Burger*

Ray Burger is a vocational expert and testified about the jobs that Mr. Coonce was qualified to work.  Burger determined special vocational profiles for each Mr. Coonce's past jobs:  mechanic was medium and skilled work, fleet manager was light and skilled work, and mechanic/service manager was medium and skilled work.  None of Mr. Coonce's skills would transfer to sedentary work.

The ALJ asked Burger if a hypothetical person with all of the same attributes as Mr. Coonce, including the limitation that Mr. Coonce could have no more than superficial interaction with the public, could work as a fleet manager. Burger said no because of the limitation on contact with the public.  Burger answered the same way for both the mechanic and service manager positions. Burger listed four positions he thought Mr. Coonce could do and the number of those positions that existed:  medium assembler, 6,519 jobs; light assembler, 20,208 jobs; medium packer, 2,489 jobs; and light packer, 5,255 jobs.  R. 587. Burger felt that if the restriction on contact with the public was removed, Mr. Coonce could do all of his previous positions.  Burger felt, however, that if Mr. Coonce's testimony was fully credited, there were no jobs he could work.

*Framework for Determining Disability and the Standard of Review*

To be eligible for the disability insurance benefits he seeks, Mr. Coonce must establish that he suffered from a disability within the meaning of the Social

Security Act while he was still insured.  To prove disability under the Act, the claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  Mr. Coonce was disabled only if his impairments were of such severity that he was unable to perform work that he had previously done and if, based on his age, education, and work experience, he also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to him in his immediate area, or whether he would be hired if he applied for work.  42 U.S.C. § 423(d)(2)(A).

This standard is a stringent one.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

To determine whether Mr. Coonce was disabled under the Social Security Act, the ALJ followed the familiar five-step analysis set forth in 20 C.F.R. § 404.1520.  The steps are as follows:

(1)   Has the claimant engaged in substantial gainful activity?  If so, he was not disabled.

(2)   If not, did the claimant have an impairment or combination of impairments that are severe?  If not, he was not disabled.

(3)   If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, the claimant was disabled.

(4)   If not, could the claimant do his past relevant work?  If so, he was not disabled.

(5)   If not, could the claimant perform other work given his residual functional capacity, age, education, and experience?  If so, then he was not disabled.  If not, he was disabled.

See generally 20 C.F.R. § 404.1520.  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

The ALJ found that Mr. Coonce's insured status ended on December 31, 2003.  R. 12.  At step one, the ALJ determined that Mr. Coonce had not engaged in substantial gainful activity since January 1, 1999.  At step two, the ALJ determined that Mr. Coonce had a severe impairment of a history of back pain, though that finding is not at issue here.  The ALJ found that Mr. Coonce also had the medically determinable mental impairments of schizophrenia, executive cognitive disorder, and depression.  R.18.  Using the second part of the special "technique" set forth in 20 C.F.R. § 404.1520a, the ALJ considered the functional limitations caused by Mr. Coonce's mental impairments.  The ALJ determined that Mr. Coonce had mild restrictions in activities of daily living; no difficulties in

maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and had not experienced any episodes of decompensation. These determinations led the ALJ to conclude that Mr. Coonce's mental impairments were not severe.  R. 21.

At step three, the ALJ found that Mr. Coonce did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  The ALJ evaluated Mr. Coonce against the following listings:   1.04, disorders of the spine; 11.02, convulsive epilepsy; 11.03, non-convulsive epilepsy; and 11.04, central nervous system vascular accident.  R. 21-22.  The ALJ also evaluated Mr. Coonce's obesity, though there is no listing for obesity.  The ALJ determined that Mr. Coonce had the residual functional capacity to lift and carry up to fifty pounds occasionally and twenty five pounds frequently.  The ALJ determined that Mr. Coonce had no limitations on his ability to sit, stand, or walk.  R. 25.

At step four, the ALJ determined that Mr. Coonce could do his past relevant work as a mechanic, fleet manager, and mechanic service manager.  R. 25.  The ALJ went on to make a step five finding that there were jobs Mr. Coonce could perform in significant numbers in the national economy.  The ALJ then concluded that Mr. Coonce was not disabled, as defined by the Social Security Act, from January 1, 1999 through the date of his decision on February 6, 2008.  R. 26-27.

The Social Security Act provides for judicial review of the Commissioner's denial of benefits.   42 U.S.C. § 405(g).   Because the Appeals Council denied further review of the ALJ's findings, the ALJ's findings are treated as the final decision of the Commissioner.  *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  If the Commissioner's decision is both supported by substantial evidence and based on the proper legal criteria, it must be upheld by a reviewing court.  42 U.S.C. § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), citing *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering the facts or the credibility of the witnesses.  *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the ALJ's resolution of the conflict.  *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based the decision on serious factual mistakes or omissions.  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).   The ALJ's decision must be based upon consideration of all the

relevant evidence, and the ALJ must articulate at some minimal level his analysis of the evidence so that the court can trace adequately the path of the ALJ's reasoning. *Diaz*, 55 F.3d at 307-08.

*Discussion*

I.   *Material Inconsistency?*

Mr. Coonce argues that the ALJ's opinion was internally inconsistent as to whether he suffered from schizophrenia. The essence of Mr. Coonce's argument is that the ALJ was inconsistent in two ways, first by citing numerous doctors who did not diagnose Mr. Coonce with schizophrenia but then deciding that Mr. Coonce had the medically determinable impairment of schizophrenia, and second, by deciding that Mr. Coonce had the medically determinable impairment of schizophrenia but then concluding it was not a severe impairment. The court finds the ALJ's decision was not internally inconsistent, and that any perceived inconsistency is harmless.

Step two of the five step sequential evaluation requires the ALJ to determine if a claimant has a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ uses the special "technique" to determine if a claimant has a severe mental impairment. 20 C.F.R. § 404.1520a(a). Under the special "technique," the ALJ first determines if the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If so, the ALJ next

rates "the degree of functional limitation resulting from the impairment(s)." 20 C.F.R. § 404.1520a(b)(2).  The ALJ rates the degree of functional limitations in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.   20 C.F.R. § 404.1520a(c)(3).  If the ALJ rates "the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment is not severe."  20 C.F.R. § 404.1520a(d)(1).  Using the special "technique," the ALJ wrote that "the evidence establishes claims of schizophrenia, executive cognitive disorder, and depression."  R. 18.  Next, using the functional limitations, the ALJ determined that Mr. Coonce's medically determinable mental impairments were not severe.  R. 21.

If the ALJ's decision is materially inconsistent, a remand may be necessary. *Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996) (ordering remand where ALJ had determined that the claimant could do sedentary work but could not sit for long periods of time, yet sedentary work requires prolonged sitting).

The reasoning of *Peterson* does not apply here.  In this case, the ALJ cited medical records that were contradictory as to whether Mr. Coonce had schizophrenia.  Dr. Miller, a treating psychiatrist, did not diagnose Mr. Coonce with schizophrenia.  The hospital records from Mr. Coonce's viral infection do not reflect a diagnosis of schizophrenia.  Dr. Harper, a treating physician, did not diagnose Mr. Coonce with schizophrenia.  The ALJ noted that Dr. Sullivan had

said Dr. Miller had diagnosed Mr. Coonce with schizophrenia, but Dr. Miller's records do not reflect that he ever diagnosed Mr. Coonce with schizophrenia. See R. 17. The ALJ then noted, however, that Dr. Sullivan, through the administration of the Minnesota Multiphasic Personality Inventory, had found symptoms consistent with schizophrenia. Next, the ALJ concluded that Mr. Coonce had the medically determinable impairment of schizophrenia. R. 18. The ALJ did not contradict himself by noting that most physicians who examined Mr. Coonce did not diagnose him with schizophrenia, but that one physician had found symptoms of schizophrenia and later offered a retrospective diagnosis of it.

The ALJ then moved on to the second step of the special "technique" to determine whether the claimant had a severe impairment. The ALJ evaluated the functional limitations of Mr. Coonce's mental impairments and determined they were not "severe" within the meaning of the Social Security Act. The ALJ did not contradict himself by finding Mr. Coonce had a medically determinable impairment but that it was not severe. The ALJ here did what he was supposed to do. He acknowledged evidence supporting Mr. Coonce, but he then evaluated it and found only mild functional limitations. That is not the sort of inconsistency that was seen in *Peterson*; it is merely an acknowledgment of conflicting evidence. Finally, because the ALJ found only mild limitations in two of the functional areas, and because that finding was well supported, any arguable error in the ALJ's phrasing of his opinion would have been harmless.

II.    *Dr. Sullivan's Opinion*

Mr. Coonce argues next that the ALJ erred by discounting the opinion of his treating doctor, Dr. Sullivan.    The ALJ evaluated Mr. Coonce's functional limitations against listings 12.03 (schizophrenic, paranoid, and other psychotic disorders) and 12.04 (affective disorders).   The ALJ determined that Mr. Coonce's mental impairments were not severe.  R. 21.   Mr. Coonce argues that the ALJ erred in this determination because of Dr. Sullivan's 2007 letter stating:

> Executive cognitive dysfunction, even when it is mild, represents a significant impediment to gainful employment.   Persons with executive cognitive dysfunction have difficulty learning new tasks, are easy [sic] distracted, and are prone to committing errors in situations or tasks that require novel learning or the integration of multiple sources of information to generate an appropriate response or solution.   Even on tasks that are highly over-learned, structured and repetitive, they are prone to committing errors.

R. 285.  The court finds that substantial evidence supported the ALJ's decision not to credit Dr. Sullivan's opinion on this point.

An ALJ will give more weight to opinions from treating sources, so long as they are well supported and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).  Mr. Coonce's insured status under the Social Security Act ended on December 31, 2003.  R. 12.  Mr. Coonce claims he became disabled on January 1, 1999.  *Id.*  In May 2004 and June 2004, five months after Mr. Coonce's insured status lapsed, Dr. Sullivan evaluated Mr. Coonce.  R. 287.  In a similar case requiring a retrospective judgment because insured status had

expired, *Wilder v. Apfel* explained that a claimant does not need contemporaneous *medical* corroboration of his condition but does need *some kind* of contemporaneous corroboration of his condition.   153 F.3d 799, 802 (7th Cir. 1998) (holding that the ALJ erred because he discounted strong contemporaneous evidence in favor of the claimant).

The ALJ cited contemporaneous evidence that contradicted Dr. Sullivan's later impressions.  In November 2003, while Mr. Coonce was hospitalized for a viral infection, he said that he ran his own interstate car repair business.  In June 2004, at the same time that Dr. Sullivan was diagnosing Mr. Coonce with schizophrenia, Dr. Miller noted that Mr. Coonce  spent most of his time fixing cars and supervised two employees.  Also in June 2004, Dr. Miller filled out a report of psychiatric status for the Social Security Administration and reported that he thought Mr. Coonce "should be able to function in job." R. 196.  In October 2005, Mr. Coonce told Dr. Miller that he had two part-time jobs and was working 30 hours per week.  R. 18.  Because of this contradictory evidence, the ALJ did not err by discounting Dr. Sullivan's 2007 opinion about the severity of Mr. Coonce's schizophrenia back in 2003.  R. 21.

Even when contemporaneous, a treating physician's opinion is entitled to controlling weight only if it is not contradicted and is supported by substantial evidence.   See 20 C.F.R. § 404.1527(d)(2).   Dr. Sullivan did not evaluate Mr. Coonce until five months after the insured period ended.  Mr. Coonce needed to

show contemporaneous evidence of a severe impairment:  he has not.  Substantial evidence supports the ALJ's decision that Dr. Sullivan's subsequent 2007 opinion regarding the severity of Mr. Coonce's mental impairments was not entitled to controlling weight.

III.    *Need for a Medical Expert*

Mr. Coonce argues that the ALJ should have obtained medical expert witness testimony before rejecting Dr. Sullivan's conclusion that Mr. Coonce's mental impairments were severe.  Mr. Coonce also argues that by rejecting Dr. Sullivan's conclusion, the ALJ was "playing doctor."  Mr. Coonce highlights two pieces of information not cited by the ALJ to support his argument:  (1) Mr. Coonce's non-verbal information processing abilities were in the 4th percentile, and (2) his mental flexibility under time pressure was below the 10th percentile.

On this point, Mr. Coonce cited *Green v. Apfel*.  204 F.3d 780, 782 (7th Cir. 2000) (holding that the ALJ erred by rejecting a claim without having a physician examine the claimant).  In *Green* the Seventh Circuit observed that an ALJ must not "play doctor."  *Id.* at 781.  An ALJ must build a logical bridge from the evidence to her conclusions, and one way to do this is to call a medical expert. See *id.*

If a claimant's sources cannot give sufficient medical evidence, an ALJ may ask the claimant to have a medical examination.  20 C.F.R. § 404.1517.  "When there are inconsistencies in the evidence that cannot be resolved . . . we will make a determination or decision based on the evidence we have."  20 C.F.R. § 404.1527(c)(4).  The ALJ noted numerous inconsistencies in the record regarding Mr. Coonce's impairment.  The ALJ, however, built a logical bridge between the

facts and his conclusions.  He did not "play doctor" or err by not calling a medical expert witness.   He weighed conflicting evidence and reached a reasonable conclusion that was consistent with the weight of the evidence.

Mr. Coonce is correct that the ALJ did not cite the two pieces of evidence he identified.  An ALJ does not need to cite every piece of information in the record but "must articulate some legitimate reason for his decision."  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (holding the ALJ erred in giving little or no weight to the treating physician's opinion and claimant's testimony).  The ALJ cited Dr. Sullivan's more important but later conclusion that Mr. Coonce was severely limited by schizophrenia.  R. 20.  Dr. Sullivan stated his conclusion in 2007 based on a 2004 examination.

The ALJ noted that Dr. Sullivan theorized in 2007 that Mr. Coonce would have been disabled in 2003, but the contemporaneous medical records and other evidence contradicted this conclusion.  The ALJ noted the following evidence contradicting Dr. Sullivan's conclusion:  Dr. Miller said Mr. Coonce should be able to work, and Dr. Sullivan, in his own report, thought Mr. Coonce was answering questions in an effort to appear more impaired than he was.  The ALJ noted that the most explicit conflict in the evidence was that Dr. Sullivan thought Mr. Coonce would have been severely impaired in 2003, but in 2003 Mr. Coonce reported that he ran an interstate car repair business.  The ALJ needed to determine Mr. Coonce's mental state between 1999 and 2003.  The ALJ weighed conflicting

pieces of information and explained how he did so. The decision whether to call a medical expert witness is left to the ALJ's discretion and he did not abuse his discretion by choosing not to do so.  See 20 C.F.R. § 404.1517.

*Conclusion*

The ALJ's decision is affirmed.  Final judgment will be entered accordingly.

Date:  August 21, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

J. Frank Hanley II
laurasiener@aol.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov